736 P.2d 989

**Dan SALTER, D.D.S. and Larry Cook, D.D.S., Plaintiffs-Appellees,**

v.

**Keith D. JAMESON, D.D.S., Defendant-Appellant.**

**No. 8576.**

Court of Appeals of New Mexico.

March 19, 1987.

Certiorari Denied April 24, 1987.

Robert Suzenski, P.C., Susan Weckesser, Patrick A. Casey, P.A., Santa Fe, for defendant-appellant.

Saul Cohen, Sutin, Thayer & Browne, P.C., Santa Fe, for plaintiffs-appellees.

## OPINION

BIVINS, Judge.

Plaintiffs sought damages against defendant based on claimed breach of duty of loyalty and tortious interference with prospective contractual relations. From a judgment awarding plaintiffs $30,000 compensatory damages and $10,000 punitive damages, defendant appeals. He raises four issues: (1) whether defendant had a duty of loyalty and, if he did, whether he breached it; (2) whether defendant's actions interfered with plaintiffs' prospective relations with their patients and with a prospective sale of the Questa practice; (3) whether the compensatory damage award is supported by substantial evidence; and (4) whether an award of punitive damages was proper in this case.

We affirm on the first issue and that portion of the second issue dealing with tortious interference with prospective relations with patients, but reverse and remand as to the claim of tortious interference with a prospective sale. As a result, we do not reach the remaining two issues.

After experiencing a substantial following from the Questa area, plaintiffs, two established dentists with their primary office in Taos, decided to open a branch in Questa. They purchased a building, had it remodeled, bought equipment and supplies and proceeded to staff the office. Defendant, a young dentist, who at the time was unemployed, was engaged to run this office. He was paid $150 a day for the days he worked at the Questa office and was provided with a staff of three persons. Plaintiffs paid all salaries and overhead, set the fee schedule and consulted with defendant on a regular basis. Before commencing, defendant spent two weeks at plaintiffs' Taos office so plaintiffs could review his work and show him how they wanted him to operate the Questa office.

Defendant opened the Questa office on March 1, 1982, and ran it until March 10, 1983, when he left to open his own office "down the street." Before leaving, defendant either copied the recall records or took them with him; wound down plaintiffs' practice by delaying or postponing dental work for patients until he opened his own office; failed to make appointments for patients; solicited patients away from plaintiffs; and took two of the three employees with him when he left.

Plaintiffs hired Dr. Jacobs, an experienced Albuquerque dentist, to run the Questa office after defendant left. Because there was insufficient practice to make it feasible to continue, plaintiffs closed the office after six months.

There was no written agreement between plaintiffs and defendant. The parties agree that either side could have termi-

nated the arrangement at will, and that there was no covenant against competing after defendant left.

█ The above highlights facts favorable to the prevailing parties. There were other facts that, if believed, might have supported a different result, but we disregard those facts. It is the function of the fact finder, not the reviewing court, to weigh the evidence, resolve conflicts and decide where the truth lies. As long as we can find substantial evidence to support the trial court's findings, our job is complete and we look no further. This, then, is the scope of review and it is exceedingly narrow. *Toltec Int'l, Inc. v. Village of Ruidoso*, 95 N.M. 82, 619 P.2d 186 (1980).

## 1. Violation of Duty of Loyalty

█ Defendant challenges the trial court's findings that he worked as an employee of plaintiffs, by attempting to demonstrate his status was that of an independent contractor. Defendant does not explain why an independent contractor, as opposed to an employee, owes no duty of loyalty and cites no authority that there is any difference. Nevertheless, assuming defendant is correct, that an independent contractor owes a lesser duty or no duty at all, it would not matter here.

Substantial evidence supports the finding of defendant's status as an employee. While certain indicia are helpful in determining a master-servant relationship, as distinguished from that of an independent contractor, it is generally agreed that the determinative factor is the right to control. *Jaramillo v. Thomas*, 75 N.M. 612, 409 P.2d 131 (1965); *Dibble v. Garcia*, 98 N.M. 21, 644 P.2d 535 (Ct.App.1982). Here, there was substantial evidence not only of the right to control but of the exercise of that right. In addition to reviewing defendant's work before opening the Questa branch and instructing defendant as to fee schedules and office procedures, plaintiffs, as well as their office manager, supervised the branch operation on a regular basis.

█ Having concluded that substantial evidence supports the finding of an employer-employee relationship between plaintiffs and defendant, what duty did defendant owe?

It is well settled that the employment relationship is one of trust and confidence and places upon the employee a duty to use his best efforts on behalf of his employer. The general rule is that he who undertakes to act for another in any matter of. trust or confidence shall not in the same matter act for himself against the interest of the one relying upon his integrity. \* \* \*

\* \* \* Although an employee may lawfully plan to compete with his employer, it is also well established that an employee has a duty not to do disloyal acts in anticipation of future competition.

*Las Luminarias of N.M. Council of the Blind v. Isengard*, 92 N.M. 297, 302, 587 P.2d 444, 449 (Ct.App.1978) (citations omitted). Although one member of the panel in *Las Luminarias* concurred in the result only and a second specially concurred, *see Casias v. Zia Co.*, 94 N.M. 723, 616 P.2d 436 (Ct.App.1980), we believe the above principles announced by Judge Lopez correctly state the law and we adopt them here.

█ Defendant does not dispute the existence of a duty; he argues that the evidence will not support a finding of breach of duty. We disagree. The trial court found that defendant decided in November or December 1982 to terminate his employment with plaintiffs. Without telling plaintiffs of his plans, defendant "wound down" his services and did not give his best efforts to the practice. The trial court further found that defendant copied the names and addresses of all of plaintiffs' patients, copied other vital information, deferred dental work until after he had terminated, and induced patients to defer needed dental work until he opened his own office. It found defendant failed to make appointments for plaintiffs' patients for the new dentist, and that defendant opened his office taking two of the three staff employees with him. Defendant never gave notice to plaintiffs of his intention to leave and, when confronted, he said he intended to leave at the end of the week.

Defendant had a right to compete with plaintiffs after he left their employ, and he had a right to make reasonable plans in advance of leaving. What defendant could not do was undermine plaintiffs' practice by engaging in disloyal acts designed to promote his own self-interest to the detriment and damage of his employers. The above findings are supported by substantial evidence. Thus, the trial court's findings of breach of duty of loyalty are affirmed.

### 2. Interference with Prospective Relations

■ New Mexico recognizes a cause of action for tortious interference with prospective contractual relations. *M & M Rental Tools, Inc. v. Milchem, Inc.,* 94 N.M. 449, 612 P.2d 241 (Ct.App.1980). The trial court found improper interference in two areas: interference with patients and with the sale of plaintiffs' practice to a prospective buyer. We have already detailed the findings as to defendant's activities in inducing patients away from plaintiffs. Substantial evidence supports those findings and they will not be disturbed on appeal. A different result is required, however, with respect to the finding of interference with a prospective sale.

■ A review of the testimony of Dr. Higgins, the dentist with whom plaintiffs discussed a possible sale, does not persuade us that defendant's conversation with that dentist had any significant effect on Dr. Higgins' decision not to purchase. Dr. Higgins testified that defendant called him and cautioned against " 'getting into my kind of deal with [Doctors] Cook and Salter.' " First, defendant's "kind of deal" did not involve a sale. Second, Dr. Higgins said he had already made up his mind not to buy when this conversation took place. This evidence would not support a finding of tortious interference. Plaintiffs do not address this aspect of the findings in their brief. We found only one reference, outside of Dr. Higgins' own testimony, as to why he decided against buying plaintiffs' practice. That reference came through the testimony of Dr. Salter who said Dr. Higgins told him at a dental conference that defendant did not buy because he said there would be no practice, " 'nothing left.' " This evidence, however, was not admitted for the truth of the matter asserted, only as evidence of plaintiffs' efforts to mitigate their damages.

■ The trial court's award of compensatory damages is based in part on intentional interference with a sale to a prospective purchaser. Because of the lack of evidence, this theory should not have been considered. We do not know what effect this theory may have had on the award. Under these circumstances, we must vacate the judgment and remand for entry of revised findings that exclude the tortious interference based on a prospective sale. *See Perfetti v. McGhan Medical,* 99 N.M. 645, 662 P.2d 646 (Ct.App.1983).

■ Where the trial judge who heard the case dies, resigns or retires pending appeal, a new trial is required. *See Smith v. Trailways, Inc.,* 103 N.M. 741, 713 P.2d 557 (Ct.App.1986). In this case, the trial judge was elected to the supreme court and has consequently resigned his position as trial judge. Thus, a new trial on the issues of compensatory and punitive damages must be conducted by another judge, unless the chief justice should appoint the trial judge who heard this case to preside. N.M. Const. art. VI, § 15 (Cum. Supp.1986). In that case, all that would be required would be to delete from the decision any consideration of tortious interference based on the claimed prospective sale, and to make new findings as to damages, should the deletion of that one item affect damages.

The trial court's judgment is vacated and the case is remanded for further proceedings consistent with this opinion. Defendant is assessed the cost of appeal.

IT IS SO ORDERED.

FRUMAN and APODACA, JJ., concur.