828 P.2d 425

**Georgianne CONANT, Plaintiff–Appellee,**

**v.**

**Abran RODRIGUEZ, d/b/a Abe Rodriguez and Associates, Defendant–Appellant.**

**No. 11851.**

Court of Appeals of New Mexico.

Feb. 12, 1992.

Michael J. Golden, Moore & Golden, P.A., Santa Fe, for plaintiff-appellee.

Ronald Boyd, Santa Fe, for defendant-appellant.

## OPINION

HARTZ, Judge.

Abran Rodriguez, d/b/a Abe Rodriguez and Associates, appeals a judgment entered against him for compensatory and punitive damages in a non-jury trial. Plaintiff, Georgianne Conant, alleged misconduct with respect to a polygraph examination that her employer, Katherine Katona, ordered her to take. Leo Gurule, working under the auspices of Abe Rodriguez and Associates, conducted the examination. Gurule reported to Katona that Conant failed the examination and that she untruthfully answered questions concerning an alleged theft of money from the business. Katona then fired Conant. Shortly after she was dismissed, Conant met with Rodriguez to discuss the examination conducted by Gurule. At the meeting Rodriguez told Conant that the test performed by Gurule was invalid and inconclusive and that Conant should not have been fired based upon the examination. The district court found that Conant requested Rodriguez to inform Katona of his conclusions but Rodriguez failed and refused to do so. The district court awarded Conant $5,000 in compensatory damages and $50,000 in punitive damages, apportioning the damages 50% against Rodriguez, 25% against Gurule, and 25% against Katona. Based on its finding that Gurule was an employee of Rodriguez, the district court held Rodriguez liable for Gurule's percentage of the damages under the doctrine of respondeat superior.

On appeal Rodriguez contends that (1) Gurule was not Rodriguez's employee, (2) there was no basis for awarding punitive damages against Rodriguez, (3) there was insufficient evidence that Rodriguez was negligent or breached a duty owed to Conant, (4) Conant's claim was barred by a release that she signed, (5) if Rodriguez

was negligent, the negligence did not cause Conant to suffer damages, (6) the award of punitive damages was excessive, (7) Rodriguez is not responsible under respondeat superior for the punitive damages awarded against Gurule, and (8) there was insufficient evidence that Gurule acted in a manner justifying punitive damages. We agree with Rodriguez's seventh contention, which makes it unnecessary for us to address the eighth contention. In all other respects we affirm the judgment below.

## I. GURULE'S STATUS AS AN EMPLOYEE

■ Rodriguez described his relationship with Gurule in a deposition and at trial. Rodriguez was the sole owner of Abe Rodriguez and Associates. He had a Santa Fe office where Gurule conducted polygraph examinations under the auspices of Abe Rodriguez and Associates. Rodriguez gave Gurule his first experience on the job and spoke with him daily to check on his work. Rodriguez furnished Gurule with intake documents, including a form that recited that the examination was to be given "by a representative of Abe Rodriguez & Associates" and that purported to release Abe Rodriguez and Associates from all claims of damages. Gurule paid Rodriguez 40% of the revenue he received from examinations he conducted.

The Conant episode was consistent with this relationship between Gurule and Rodriguez. Conant executed the release form that named Abe Rodriguez and Associates. After Rodriguez learned of the examination of Conant, he summoned Gurule to his Albuquerque office. Rodriguez felt some responsibility for the examination performed by Gurule. He reprimanded Gurule for the language he used to instruct Conant about the examination and told him that he should have stopped the examination because of the way in which it was conducted. Gurule agreed with the reprimand.

Although the method of payment to Gurule may suggest an independent-contractor relationship, that method is not unlike the payment of commissions to employees in various occupations. The evidence of Rodriguez's supervision and control of Gurule's work was sufficient to sustain the district court's finding that Gurule was Rodriguez's employee. *See Salter v. Jameson*, 105 N.M. 711, 713, 736 P.2d 989, 991 (Ct.App.1987).

## II. SUFFICIENCY OF EVIDENCE TO JUSTIFY PUNITIVE DAMAGES

■ Rodriguez contends that there was not sufficient evidence to establish his liability for punitive damages. We disagree. The district court found that Rodriguez acted "intentionally and or recklessly without regard for the rights and welfare of [Conant]." The evidence was sufficient to enable the district court to find that Rodriguez knew that the polygraph examination conducted by Gurule was defective, that he knew that Conant was fired as a result of the polygraph examination, and that nevertheless he did not honor Conant's requests to contact Katona and advise her of the error. This failure by Rodriguez to correct the error in the report on the polygraph examination bespeaks a callous disregard, a wanton indifference, to the rights and interests of Conant. *See Ruiz v. Southern Pac. Transp. Co.*, 97 N.M. 194, 202, 638 P.2d 406, 414 (Ct.App.1981) (disregard of known safety measures can show wanton and reckless negligence); SCRA 1986, 13-1827 (defining wanton conduct). Given the district court's determination that Gurule was an employee of Rodriguez, there can be no doubt of the duty of Rodriguez to inform Katona of the error. *See Vigil v. Rice*, 74 N.M. 693, 698-99, 397 P.2d 719, 722-23 (1964) (once doctor learned that his office had submitted erroneous libelous report, he had affirmative duty to correct it). Thus, punitive damages against Rodriguez were properly awarded to punish his reckless indifference. *See Construction Contracting & Management v. McConnell*, 112 N.M. 371, 375, 815 P.2d 1161, 1165 (1991) (standard for imposing punitive damages); *Gonzales v. Sansoy*, 103 N.M. 127, 130, 703 P.2d 904, 907 (Ct.App.1984) (punitive award may be warranted when negligence is aggravated by a mental state such as reckless indifference).

Our disposition of this issue also disposes of the contention that there was insufficient evidence that Rodriguez was negligent or breached a duty owed by him to Conant.

## III. RELEASE

■ Rodriguez contends that Conant's claim is barred by a release she signed that relieved Abe Rodriguez and Associates "from any claims of damages, including but not limited to false arrest, false imprisonment, civil rights, libel, slander, invasion of privacy or negligence[.]" Conant responds that the release is unenforceable because it is against public policy, *see Leibowitz v. H.A. Winston Co.*, 342 Pa.Super. 456, 493 A.2d 111 (1985), and because she was compelled to sign the release, *see Lynch v. Santa Fe Nat'l Bank*, 97 N.M. 554, 627 P.2d 1247 (Ct.App.1981).

We need not reach the issue of whether the release is valid with respect to Conant's claims of negligence. The release is certainly invalid to the extent that it purports to release Rodriguez of liability for willful or reckless misconduct. *See* Restatement (Second) Contracts § 195(1) (1981); *cf. Southwestern Pub. Serv. Co. v. Artesia Alfalfa Growers' Ass'n*, 67 N.M. 108, 119, 353 P.2d 62, 69–70 (1960). As already noted, the district court found that Rodriguez had engaged in such misconduct. Because the finding of such misconduct suffices to sustain the award of compensatory damages and the award (to the extent that we affirm it) of punitive damages, it is unnecessary to determine whether the release would foreclose a claim that was based solely on simple negligence.

## IV. COMPENSATORY DAMAGES

■ Rodriguez contends that there was insufficient evidence that his acts or omissions damaged Conant. He points out that any wrongdoing by him occurred after Katona terminated Conant and argues that there was no evidence that Katona would have considered rehiring Conant if Rodriguez had informed Katona that the polygraph examination was invalid. The evidence at trial, however, would support the conclusion that the sole basis for Conant's termination was the report on the polygraph examination. Conant had worked for Katona for over six years, during which time Katona had periodically complained about cash shortages. Although she had some complaints about Katona, Conant testified that she loved to work at the store. A reasonable inference to be drawn from the evidence is that if Katona had been informed of the erroneous report concerning the polygraph test, Conant would have been reinstated and would have suffered only nominal damages. Thus, the district court could properly assess 50% of the compensatory damage award against Rodriguez for his wanton failure to notify Katona of the invalidity of the polygraph examination.

■ Moreover, it is appropriate to hold that Rodriguez's refusal to retract made him liable for all consequential damages caused by Gurule's negligence. By failing to notify Katona of the error in Gurule's examination, Rodriguez protected his interest in his share of Gurule's fee, which he might have needed to refund if Katona learned of the error and demanded her money back. "[H]aving received the benefits of [Gurule's examination, Rodriguez] cannot now reject the burdens incident thereto." *Grandi v. LeSage*, 74 N.M. 799, 811, 399 P.2d 285, 293 (1965). Rodriguez's refusal to contact Katona constituted a ratification of Gurule's negligence for which Rodriguez is liable. *See id.; Tribune Ass'n v. Follwell*, 107 F. 646, 654 (2d Cir. 1901). Because Rodriguez's ratification of Gurule's negligence was in wanton disregard of Conant's interest, he cannot rely on the release signed by Conant even if Gurule's error was only simple negligence. *See* Restatement (Second) of Contracts § 195(1).

## V. ALLEGED EXCESSIVENESS OF PUNITIVE DAMAGE AWARD

■ Rodriguez contends that the $25,000 award of punitive damages against him was excessive, apparently on the ground that the award of punitive damages was disproportionate to the $5,000 award of

compensatory damages. This claim is foreclosed by our supreme court's recent decision in *Green Tree Acceptance, Inc. v. Layton,* 108 N.M. 171, 769 P.2d 84 (1989), in which the court affirmed an award of $10,000 in punitive damages when the compensatory damage award was only $33.75.

One may also read Rodriguez's argument as stating that the award of punitive damages was inappropriate because of the absence of any inquiry into his income or net worth. *See Adams v. Murakami,* 54 Cal.3d 105, 813 P.2d 1348, 284 Cal.Rptr. 318 (1991) (en banc). We do not consider this contention, however, because Rodriguez has not established that he preserved the issue for review by presenting it to the district court.

## VI. LIABILITY OF RODRIGUEZ FOR PUNITIVE DAMAGE AWARD AGAINST GURULE

Rodriguez contends that he should not be liable under the doctrine of respondeat superior for the $12,500 award of punitive damages against Gurule. We agree.

It is important to distinguish between two questions: (1) can the court impose a punitive damage award against the master arising from misconduct by a servant? and (2) can the court require the master to pay a punitive damage award against the servant? The answer to the first question is "yes"; the answer to the second is "no."

Our supreme court answered the first question when it held "that a master or employer is liable for punitive damages for the tortious act of an employee acting within the scope of his employment *and* where the employer in some way participated in, authorized or ratified the tortious conduct of the employee." *Newberry v. Allied Stores, Inc.,* 108 N.M. 424, 431, 773 P.2d 1231, 1238 (1989); *see* Restatement (Second) of Torts § 909 (1979). In other words, punitive damages may be awarded against an employer who participated in, authorized, or ratified misconduct of an employee.

That is not, however, the ground upon which the district court ordered Rodriguez to pay $12,500 in punitive damages beyond the $25,000 awarded directly against Rodriguez himself. What the district court did was require the master, Rodriguez, to serve as an alternative source of payment of a punitive damage award against the servant, Gurule. After ordering that Gurule pay $12,500 in punitive damages, it held Rodriguez liable for the award against Gurule under the doctrine of respondeat superior, meaning that Conant could collect all or a portion of the $12,500 from Rodriguez rather than pursuing Gurule. This was improper.

The authority for imposing liability on a master because of a servant's misconduct does not imply that the master is responsible for paying a punitive damage award imposed upon the servant whose conduct provides the predicate for the punitive damage award against the master. *See Gallegos v. Citizens Ins. Agency,* 108 N.M. 722, 728, 779 P.2d 99, 105 (1989) (when punitive damages are awarded against multiple defendants, they must be separately determined as to each). The purpose of punitive damages is to punish the wrongdoer and to deter the wrongdoer and others in a similar position from such misconduct in the future. *See Construction Contracting & Management v. McConnell,* 112 N.M. at 375, 815 P.2d at 1165; Restatement (Second) of Torts § 908(1) (1979). We must presume that the punitive damage award against the master is adequate to punish the master and to deter other masters from similar lapses. To impose an additional liability upon the master for the punitive damage award against the servant would be to impose a penalty without any proper purpose, because the additional liability is beyond what is necessary to accomplish the punitive and deterrent purposes of a punitive damage award against the master.

The illogic of requiring the master to pay the amount of punitive damages awarded against the servant is highlighted when one considers the manner in which the amount of punitive damages is determined. Two factors in assessing damages are the character of the wrongful act and the wealth of

the person against whom punitive damages are awarded. *See* Restatement (Second) of Torts § 908(2). Thus, in assessing an award against the master, it is appropriate to consider that the culpability of the master may be less than that of the servant whose act provided the predicate for liability. *See Montoya v. Moore*, 77 N.M. 326, 330–31, 422 P.2d 363, 365–66 (1967) (ordering remittitur of punitive damage award against insurance company when there was no evidence of malice, violence, or criminal conduct by the company although adjuster apparently committed fraud). Similarly, a punitive damage award against a master may be very different from the award against the servant because of a difference in the income and assets of the two. It may even be possible that at the time of trial the wealth of the servant is substantially greater than that of the master. In such a circumstance, an appropriate punitive damage award against the servant may be substantially greater than an appropriate award against the master, in which case it would make no sense to impose upon the master any liability for the punitive damage award against the servant.

Because the judgment of the district court required Rodriguez to pay both a punitive damage award against him of $25,000 and a punitive damage award against Gurule of $12,500, we reverse the second component of Rodriguez's liability for punitive damages and affirm the judgment for punitive damages against him only to the extent of $25,000.

## VII.   CONCLUSION

For the foregoing reasons we affirm the judgment against Rodriguez for $3,750 in compensatory damages and $25,000 in punitive damages.

IT IS SO ORDERED.

BIVINS and PICKARD, JJ., concur.