1998-NMCA-143

966 P.2d 197

Frank **GILLINGHAM**, Plaintiff–Appellee,

v.

**RELIABLE CHEVROLET,**
Defendant–Appellant.

No. 18,639.

Court of Appeals of New Mexico.

Sept. 15, 1998.

Carl Bettinger, Shapiro and Bettinger, LLP, Albuquerque, NM, Alfred M. Sanchez, Albuquerque, NM, for appellee.

J. Douglas Compton, Emily A. Franke, Butt, Thornton & Baehr, P.C., Albuquerque, NM, for appellant.

## OPINION

WECHSLER, J.

{1} Defendant, an automobile dealership, appeals from a judgment on a jury verdict in a motor vehicle accident case awarding Plaintiff punitive damages and from the district court's award of costs. Defendant raises five issues on appeal: (1) there was insufficient evidence to support the award of punitive damages; (2) the district court's instructions on punitive damages constituted reversible error; (3) it was reversible error to deny Defendant's request for a limiting instruction with respect to the post-accident dishonesty of its employee; (4) the punitive damage award violated due process; and (5) the district court abused its discretion in awarding costs.

{2} We hold that substantial evidence supports the jury's award of punitive damages, but because the district court's instructions on punitive damages constituted reversible error, we reverse and remand for a new trial on that issue. We reverse the costs award in part and remand for reconsideration.

### Background

{3} Michael Hinkle, a salesman and employee of Defendant, collided with and injured Plaintiff, while driving a car belonging to Defendant within the scope of his employment. Plaintiff sued Hinkle and Defendant. The jury found Hinkle negligent and awarded Plaintiff compensatory damages. Because Hinkle was on the job at the time of the collision, Defendant does not dispute that it is vicariously liable for those damages.

{4} The jury also found that separate conduct of Hinkle and Defendant was evidence of culpable mental states which were willful, reckless, or wanton. It found punitive damages against Hinkle and Defendant to be $250 and $275,000, respectively. The district court denied Defendant's objections to the bill of costs for $49,045.02 filed by Plaintiff. Defendant appeals from the awards of punitive damages and costs.

### Evidence Bearing on Punitive Damages

{5} As instructed by the district court, in order to determine that Plaintiff recover punitive damages from Defendant, the jury was required to find that Defendant's conduct was evidence of a culpable mental state that was "willful, reckless, or wanton." See UJI 13–1827 NMRA 1998. Defendant asserts that the evidence was insufficient to support the jury's affirmative finding.

{6} Consistent with Uniform Jury Instruction 13–1827, the jury was instructed as follows:

Willful conduct is the intentional doing of an act with knowledge that harm may result.

Reckless conduct is the intentional doing of an act with utter indifference to the consequences.

Wanton conduct is the doing of an act with utter indifference to, or conscious disregard for, a person's safety.

{7} Plaintiff contends that Defendant waived its right to challenge the sufficiency of the evidence because it failed to renew its motion for a directed verdict at the close of the evidence. This contention is without merit. During the settling of jury instructions and before closing arguments, counsel for Defendant argued that the "motion for directed verdict on [punitive damages] should be sustained." Defendant's arguments caused the district court to rule, "To the extent that you have renewed any of your motions for directed verdict, the same are denied for reasons previously stated by the Court." Thus, Defendant fairly invoked a ruling on its renewed motion. See Rule 12–216(A) NMRA 1998.

{8} "The standard of review for an award of punitive damages is whether the award is supported by substantial evidence." *Sunwest Bank of Albuquerque, N.A. v. Das-*

*kalos,* 120 N.M. 637, 639, 904 P.2d 1062, 1064 (Ct.App.1995). On appeal, this "[C]ourt views the evidence in the light most favorable to the verdict and disregards all inferences to the contrary." *Id.* The evidentiary facts favorable to Plaintiff include the following.

{9} Hinkle, a twenty-one-year-old man, applied for a vehicle sales job with Defendant on February 27, 1994. Hinkle's prior work experience was as a cook and restaurant manager. When Defendant hired Hinkle as a salesman, it anticipated that he would drive its vehicles throughout Albuquerque. Defendant's representative acknowledged that motor vehicles have the potential for causing horrible damages if they are not driven properly.

{10} Hinkle stated on his application that he had a valid driver's license. Hinkle also disclosed that he had previously been cited for driving 65 m.p.h. in a 55 m.p.h. zone. In the course of completing paperwork subsequent to his acceptance of a job, Hinkle produced, and Defendant accepted, a New Mexico identification card rather than a driver's license. Defendant had access on its premises to a computer connection with the Motor Vehicle Division of the New Mexico Taxation and Revenue Department that would have enabled it to verify Hinkle's driver's license information within minutes, but it chose not to investigate Hinkle's status because it thought it was unnecessary under the circumstances.

{11} Had Defendant used the computer connection to check Hinkle's status at the time of his application, it would have learned that he had been cited on separate occasions for improper backing and speeding over 75 m.p.h., and that his license had been suspended in February 1993 after he failed to appear in court to respond to a traffic citation. Defendant would not have permitted Hinkle to drive its vehicles if it had known that he had a suspended license.

{12} Defendant did not test or monitor Hinkle's driving nor provide him with any safe driving instructions or training. Three weeks after Defendant hired Hinkle, he collided with Plaintiff while negligently driving an automobile that he had taken for a customer test drive.

{13} The foregoing evidence permits the reasonable inferences that: (1) Defendant did not investigate Hinkle's driving record or take any steps to ensure that he would drive safely; and (2) the dealership focused only on the potential economic benefit to be derived from hiring a new salesperson and it did not care about the risk of harm to the public posed by an unlicensed or incompetent driver. Such behavior may qualify as reckless or wanton conduct. *See DeMatteo v. Simon,* 112 N.M. 112, 114–15, 812 P.2d 361, 363–64 (Ct.App.1991) (jury could reasonably conclude that construction company displayed an utter indifference for the safety of others when company representative testified "that he knew DeMatteo had received several traffic citations and had been involved in auto accidents"; "that had he been aware of DeMatteo's complete driving record, the construction company would not have entrusted DeMatteo with the company car"; and "that he knew how to obtain a copy of DeMatteo's driving record").

{14} We acknowledge that other inferences from the foregoing facts, plus other facts of record and inferences from them, would support a contrary verdict. However, when considering a claim of insufficiency of the evidence, the appellate court resolves all disputes of facts in favor of the successful party and indulges all reasonable inferences in support of the prevailing party. *See Clovis Nat'l Bank v. Harmon,* 102 N.M. 166, 168–69, 692 P.2d 1315, 1317–18 (1984); *see also Salter v. Jameson,* 105 N.M. 711, 713, 736 P.2d 989, 991 (Ct.App.1987) ("There were other facts that, if believed, might have supported a different result, but we disregard those facts."). Similarly, the possibility that on similar facts another factfinder may have drawn different inferences does not mean we must reverse here. *See State v. Anderson,* 107 N.M. 165, 168, 754 P.2d 542, 545 (Ct.App. 1988). "The question is not whether substantial evidence exists to support the opposite result, but rather whether such evidence supports the result reached." *Las Cruces Prof'l Fire Fighters v. City of Las Cruces,* 1997–NMCA–044, ¶ 12, 123 N.M. 329, 940 P.2d 177. As a consequence, we conclude

that sufficient evidence existed to support the punitive damages award.

### Instructions on Punitive Damages

{15} Defendant argues that the instructions submitted to the jury improperly allowed it to award punitive damages against Defendant based on Hinkle's culpable state of mind. In order to resolve this issue, we must consider the jury instructions as a whole. *See Cowan v. Powell,* 115 N.M. 603, 605, 856 P.2d 251, 253 (Ct.App.1993).

{16} We first review whether Defendant preserved its position. Plaintiff contends that Defendant failed to clearly object to Plaintiff's instruction number 40, and coupled with Defendant's submission of special verdict instructions, that the issue is not preserved for review on appeal. In order to preserve an error in jury instructions, Rule 1–051(I) NMRA 1998 requires that an "objection must be made to any instruction given ... or, in the case of failure to instruct on any point of law, a correct instruction must be tendered."

{17} The court appropriately rejected Defendant's alternative instruction number 40 and special verdict form because they focused upon Defendant's theory that the punitive damages could only be awarded based upon authorization, participation, or ratification by Defendant of Hinkle's conduct. Defendant did not submit a correction to Plaintiff's instruction number 40 as to punitive damages, but it did alert the issue to the attention of the trial court. During objections to jury instructions, Defendant stated "[O]n the instruction number 40 that covers punitive damages, we believe that the instruction should separate out the conduct of Mike Hinkle and Reliable Chevrolet. . . . We object to lumping both the conduct of Mike Hinkle and Reliable Chevrolet together."

{18} This case is not one in which there was a failure to instruct on a point of law; the district court gave instruction number 40, as tendered by Plaintiff, on the issue of punitive damages. *See Kennedy v. Dexter Consol. Schs.,* 1998–NMCA–051, ¶¶ 25–27, 124 N.M. 764, 955 P.2d 693, *cert. granted,* 125 N.M. 145, 958 P.2d 103 [1998] (jury instruc-

tion error not preserved because there was no elements instruction, and party did not tender a jury instruction on the point of law). Here, Defendant clearly stated his objection to the instruction given, making it apparent to the court that there was a problem. Thus, Defendant adequately preserved this issue for review on appeal, and we address the merits of its argument.

{19} Instruction number 40 states in pertinent part: "If you find that Frank Gillingham should recover compensation for damages, and if you further find the conduct of Michael Hinkle *or* Reliable Chevrolet evidenced a culpable mental state which was willful, reckless, or wanton, then you may award punitive damages." (Emphasis added.) By its terms, this instruction permitted the jury to award punitive damages if the conduct of either Hinkle *or* Defendant evidenced a culpable state of mind. At first glance, the instruction given does not appear to be problematic; both Hinkle and Defendant were potentially liable for punitive damages as independent actors. *See DeMatteo,* 112 N.M. at 115, 812 P.2d at 364 ("A defendant's utter indifference the safety of others is a sufficient basis for imposing punitive damages.").

{20} The instruction neglected, however, to specify that the jury could award punitive damages against Defendant based only on its own willful, reckless, or wanton conduct, independent of Hinkle's behavior. *See Gallegos v. Citizens Ins. Agency,* 108 N.M. 722, 728, 779 P.2d 99, 105 (1989) (when punitive damages "are awarded against two or more defendants they must be separately determined as to each"); *cf. Conant v. Rodriguez,* 113 N.M. 513, 517, 828 P.2d 425, 429 (Ct.App.1992) ("The authority for imposing liability on a master because of a servant's misconduct does not imply that the master is responsible for paying a punitive damage award imposed upon the servant whose conduct provides the predicate for the punitive damage award against the master."). As we stated in *Conant,* "[t]he purpose of punitive damages is to punish the wrongdoer and to deter the wrongdoer and others in a similar position from such misconduct in the future." *Id.,* 113 N.M. at 517, 828 P.2d at 429. Thus,

in order to impose punitive damages against an employer, its conduct must be found to be willful, reckless, or wanton, apart from the conduct of its employee. While it is clear that the law will not permit Plaintiff to recover punitive damages against Defendant based solely upon Hinkle's misconduct, nevertheless, the instruction given by the trial court incorrectly stated that the jury could award punitive damages against Defendant based solely upon evidence of Hinkle's culpable state of mind. *Cf. Albuquerque Concrete Coring Co. v. Pan Am World Servs., Inc.*, 118 N.M. 140, 143–44, 879 P.2d 772, 775–76 (1994) (employee's misconduct can generate punitive damages against an employer who authorizes, ratifies, or participates in the misconduct).

{21} Plaintiff comments that Defendant's argument might have merit but for the fact that a special verdict form required separate findings as to punitive damages with respect to both Hinkle and Defendant. The special verdict form did elicit separate affirmative answers to the questions of whether the individual conduct of Hinkle and Defendant was evidence of a culpable mind state that was willful, reckless, or wanton. Considering the jury instructions as a whole, however, the special verdict form did not cure the problem because the jury was nowhere instructed that only Defendant's culpable state of mind, and not Hinkle's, could serve as a basis for an award of punitive damages against Defendant.

{22} Additionally, Defendant argues that the district court erred in refusing his request for an instruction limiting the admissibility of evidence that Hinkle had engaged in forgery two and one-half years after the accident with Plaintiff. Plaintiff sought to introduce this evidence of Hinkle's dishonesty in order to impeach his credibility. Defendant immediately requested "that a limiting instruction be given to the jury that the questions and answers or any documents offered against Mr. Hinkle ... shall not be considered as evidence and shall not be admissible as evidence against Reliable Chevrolet for any of ... Plaintiff's claims against Reliable Chevrolet under Rule 11–105 [NMRA 1998]." Defendant's timely oral request for a contemporaneous limiting instruction was adequate to preserve its claim of error. *See Garcia ex rel. Garcia v. La Farge*, 119 N.M. 532, 540–41, 893 P.2d 428, 436–37 (1995) (holding objection alerted trial court and opposing counsel of argument and thus, issue preserved on appeal); *cf. Fahrbach v. Diamond Shamrock, Inc.*, 1996–NMSC–063, 122 N.M. 543, 549, 928 P.2d 269, 275 (explaining that in the "absence of a request for a limiting or different instruction ... we cannot say the trial court erred in phrasing its remarks"); *McNeely v. Henry*, 100 N.M. 794, 799, 676 P.2d 1359, 1364 (Ct. App.1984) (by failing to submit a written, tendered instruction, defendant waived error concerning failure to include names of three individuals as possible tortfeasors on special verdict form). Unlike the situation in *Fahrbach* and *McNeely*, Defendant here alerted the trial court to specific wording it requested be given in a limiting instruction.

{23} We do not review the district court's refusal to give a limiting instruction in isolation. The potential for unfair prejudice to Defendant from the admission of evidence of Hinkle's post-accident dishonesty is greater because the district court did not constrain the jury from awarding punitive damages against Defendant based on Hinkle's culpable state of mind. When we consider the instructions as a whole, we conclude that the jury was not properly instructed as to punitive damages. Accordingly, we reverse and remand for a new trial on the issue of punitive damages.

### Due Process

{24} Defendant contends that the award of punitive damages violated due process. Defendant has not informed us of how this issue was preserved. *See* Rule 12–213(A)(4) NMRA 1998 (brief in chief shall contain a "statement explaining how the issue was preserved in the court below"). We will not consider this issue on appeal. *See* Rule 12–216(A); *see also In re Eventyr J.*, 120 N.M. 463, 472, 902 P.2d 1066, 1075 (Ct. App.1995) (holding where defendant claims for first time on appeal that his constitutional rights were violated claim is not properly before appellate court).

*Award of Costs*

{25} Defendant challenges the district court's award of costs for consulting fees, investigation fees, postage, computerized research, photocopying, telephone, facsimile, courier, and attorney per diem expenses. Generally, the prevailing party may recover the costs of litigation. *See* NMSA 1978, § 39-3-30 (1966) (prevailing party shall recover costs "unless the court orders otherwise for good cause shown"); Rule 1-054(E) NMRA 1998 (costs allowed as a matter of course to the prevailing party unless court directs otherwise). Costs are considered to be a statutory allowance for expenses incurred in litigation. *See Dunleavy v. Miller,* 116 N.M. 353, 362-63, 862 P.2d 1212, 1221-22 (1993). In this regard, the district court has discretion to award the prevailing party necessary and reasonable costs incident to its prosecution or defense of the action. *See id.* at 362, 862 P.2d at 1221. While a district court's ruling will not be disturbed absent an abuse of discretion, such discretion should be exercised sparingly "when considering expenses not specifically authorized by statute and precedent." *Id.* at 362-63, 862 P.2d at 1221-22. Additionally, when a district court taxes unusual items as costs, it should explain the circumstances justifying the award. *See Lopez v. American Airlines, Inc.,* 1996-NMCA-088, ¶ 14, 122 N.M. 302, 923 P.2d 1187. We review each of the specific cost items challenged by Defendant on appeal.

{26} Items 9, 10, 12-16, 22, 23, and 26-29 are consulting fees paid to four physicians who qualified as experts and testified at trial. These items were properly taxed as costs by statute. *See* NMSA 1978, § 38-6-4(B) (1983) (district court may order compensation for time required in preparation prior to the giving of expert testimony); *see also Ulibarri Landscaping Material, Inc. v. Colony Materials, Inc.,* 97 N.M. 266, 271, 639 P.2d 75, 80 (Ct.App.1981). A separate finding as to the reasonable necessity of each expert's testimony was not required. *See Ulibarri v. Gee,* 106 N.M. 637, 640, 748 P.2d 10, 13 (1987).

{27} Items 1, 2, 18, and 19 are consulting fees paid to two treating physicians listed by Defendant as potential expert witnesses. Such consultations are designed to prepare parties so that no unexpected surprises would arise when the physicians testify at trial. We cannot say that the district court abused its discretion in awarding these challenged costs. *See Bower v. Western Fleet Maintenance,* 104 N.M. 731, 739, 726 P.2d 885, 893 (Ct.App.1986).

{28} Item 3 is a $18.13 fee to St. Joseph Rehabilitation listed under the heading "EXPERT WITNESSES AND TREATING HEALTH CARE PROVIDERS." We are not clear how this expenditure assisted Plaintiff in preparing for expert testimony. Items 37-54 are fees totaling $829.11 paid to obtain Plaintiff's own medical records. We are unaware of any New Mexico statute or precedent specifically authorizing such expenses to be taxed as costs. Nor can we find any authority sanctioning the taxation of fees for investigatory services, such as enumerated in Items 113-117 for a total of $1909.88. *Cf.* 10 Charles Alan Wright et al., *Federal Practice and Procedure* § 2677, at 462 (1998) (taxation usually is denied for investigation charges). Similarly, we are unaware of any New Mexico statute or precedent permitting the award of the non-legal computer research charges shown in Items 131, 132, 134, and 143, totaling $67.62 and the postage fees of $256.75 for Item 155 as costs.

{29} Finally, expenses for photocopies, telephone, facsimile, courier, mileage, travel, and per diem listed in Items 145-154 and 157-162 for a total of $2526.03 are generally not recoverable pursuant to Rule LR2-302(D) NMRA 1998. *See Lopez,* 1996-NMCA-088, ¶ 12, 122 N.M. 302, 923 P.2d 1187 ("[T]ravel expenses for attorneys should ordinarily not be taxed as costs."); *Budagher v. Sunnyland Enters., Inc.,* 90 N.M. 365, 367, 563 P.2d 1158, 1160 (1977) (district court did not abuse discretion in awarding costs for copies of depositions). The district court may exercise its discretion by taxing them as costs if the record demonstrates that they were reasonable and necessary, *see Dunleavy,* 116 N.M. at 362, 862 P.2d at 1221, and the district court explains the unusual nature of the circumstances. *See Lopez,* 1996-

**38**

NMCA–088, ¶ 14, 122 N.M. 302, 923 P.2d 1187.

{30} The unusual items total $5607.52. Plaintiff suggests that the district court's comments at the costs hearing adequately provided its explanation for taxing the unusual items as costs. The district court stated:

> The Court, having considered the pleadings that are on file in this case, I have considered all of the testimony that was taken at the time of trial, the evidence that was proffered, the evidence that was admitted at the time of trial, the arguments of counsel, feels—in all sincerity, I'm not looking at this cost bill and the proposition that hindsight is the best sight. I've looked at the cost bill carefully. I think all of the items contained in the cost bill are allowable under Rule [1–0]54 of the New Mexico Rules of Civil Procedure or under local Rule [LR2–]302 for the Second Judicial District as being applicable to those rules and representing thorough and appropriate trial preparation.

The district court's characterization of Plaintiff's preparation for trial as "thorough" is not sufficient to explain why items not specifically authorized by statute or precedent were taxed as costs in this case. Indeed, we would imagine that thorough trial preparation is a hallmark of the work of almost all attorneys who represent prevailing parties.

{31} Plaintiff also argues that the record reflects unusual circumstances justifying the district court's award of costs based upon the district court's admonitions to defense counsel during closing argument. We reject this claim. There is no indication that the district court determined that defense

counsel's arguments to the jury were the basis for an imposition of sanctions in the form of approval of Plaintiff's request for costs. *See generally Lopez,* 1996–NMCA–088, ¶ 12, 122 N.M. 302, 923 P.2d 1187 ("The opposing party should be taxed for travel expenses only when they are caused by vexatious or bad faith conduct by the opposing party or its attorney.").

{32} Consequently, we reverse the award of costs of the unusual costs in the amount of $5607.52. Based upon *Lopez,* we remand for reconsideration. *See id.* ¶ 14. If, upon reexamination, the district court determines that some or all of the unusual items identified above should be taxed as costs, it must specifically explain the circumstances justifying its award. *See* Rule LR2–302(C), (D).

### Conclusion

{33} We hold that substantial evidence supports the jury's award of punitive damages, but because the district court's instructions on punitive damages constituted reversible error, we reverse and remand for a new trial on the issue of punitive damages. We also reverse the costs award in the amount of $5607.52 and remand for reconsideration consistent with this opinion.

{34} **IT IS SO ORDERED.**

DONNELLY and BUSTAMANTE, JJ., concur.