**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**August 10, 2010**

**Elisabeth A. Shumaker**
**Clerk of Court**

<u>PUBLISH</u>

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

---

TERRY L. FREDERICK; DONNA F.
FREDERICK,

        Plaintiffs-Appellees/
        Cross-Appellants,

v.

SWIFT TRANSPORTATION CO.,
INC.,

        Defendant-Appellant/
        Cross-Appellee.

Nos. 09-3080, 09-3082

---

**APPEAL FROM THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF KANSAS**
**(D.C. No. 06-CV-01332-MLB)**

---

James R. Jarrow (John A. Watt with him on the briefs), of Baker Sterchi Cowden
& Rice, LLC, Overland Park, Kansas, for Defendant–Appellant/Cross–Appellee.

Lynn R. Johnson of Shamberg, Johnson & Bergman, Chtd., Kansas City,
Missouri, (Scott E. Nutter and Douglas R. Bradley of Shamberg, Johnson &
Bergman, Chtd., Kansas City, Missouri, and Michael W. Blanton of the Law
Offices of Michael W. Blanton, Leawood, Kansas, with him on the briefs) for
Plaintiffs–Appellees/Cross–Appellants.

---

Before **TACHA**, **McKAY**, and **GORSUCH**, Circuit Judges.

---

**McKAY**, Circuit Judge.

In this appeal the Appellant, Swift Transportation, raises ten issues based on various rulings by the district court leading up to and during the course of a jury trial in which Swift was found liable on claims brought by the Appellees, Terry and Donna Frederick. Swift argues these rulings, individually and considered together, resulted in an unfair trial; and we should grant a new trial as to both liability and damages. The Fredericks, in turn, cross-appeal the district court's denial of their motion for prejudgment interest.[1]

On the morning of March 16, 2006, a Yellow Freight tractor-trailer collided with a Swift Transportation tractor-trailer as the Swift tractor-trailer was attempting to enter a rest stop off of U.S. Highway 54 in New Mexico. Terry Frederick, who was in the sleeping berth of the Yellow Freight tractor-trailer at the time of the accident, and his wife, Donna, subsequently brought this action against Swift for the injuries he sustained.[2] Following a trial on the merits, the

[1]Swift has filed a motion to strike portions of the Fredericks' reply brief, which concerns the cross-appeal, or, alternatively, for leave to file a sur-reply brief. Essentially, Swift argues the Fredericks' reply brief, which contains a longer discussion of the basis for their cross-appeal than was contained in their principal and response brief, raises new arguments that Swift has not had a chance to address. After considering the parties' arguments, we fail to see any merit in Swift's assertions. Although the Fredericks' reply brief contains more detailed arguments than are contained in their principal and response brief, each argument was addressed in the principal and response brief alongside arguments addressing the ten issues Swift has raised on appeal. Accordingly, Swift's motion is **DENIED**.

[2] The Fredericks also initially included the driver of the Swift tractor-trailer
(continued...)

jury returned a verdict in favor of the Fredericks for a total of $23,500,000. After a reduction for comparative fault, the court entered judgment against Swift in the amount of $15,275,000. On appeal, Swift challenges the court's rulings on several jury instructions, as well as the court's rulings on the admissibility of certain witness testimony and evidence. The Fredericks, in their cross-appeal, argue the court's denial of prejudgment interest was contrary to the evidence and New Mexico law. We address each issue in turn.[3]

## Jury Instructions

We "review a district court's decision to give a particular jury instruction for abuse of discretion." *United States v. Platte*, 401 F.3d 1176, 1183 (10th Cir. 2005) (internal quotation marks omitted). However, "we review de novo legal objections to the jury instructions." *Daniel v. Ben E. Keith Co.*, 97 F.3d 1329, 1334 (10th Cir. 1996). "Where an appellate court determines that the district court has given a legally erroneous jury instruction, the judgment must be reversed if the jury might have based its verdict on the erroneously given instruction." *Level 3 Commc'n, LLC v. Liebert Corp.*, 535 F.3d 1146, 1158 (10th Cir. 2008) (emphasis omitted). We review the district court's interpretation of

_____

[2](...continued)
in the lawsuit, but she was later dismissed.

[3] In their brief, the Fredericks allege Swift has waived its right to appeal several issues. After careful review of the record, we conclude Swift properly preserved each of the ten issues it raises on appeal.

state law de novo. *Daniel*, 97 F.3d at 1332. It is undisputed New Mexico law governs the substantive merits of this dispute.

*A. Course and scope of employment*

At the close of the Fredericks' evidence, the court ruled as a matter of law that Swift's driver, who tested positive for methamphetamine on a drug test several hours after the accident, acted within the scope and course of employment. The court then instructed the jury that "Swift is liable for any negligence of [its driver]." (Appellant's App. at 2014.) On appeal, Swift argues the court erred in giving this instruction because whether its driver consumed methamphetamine before or after the accident is a disputed fact; thus, the jury could have found that the driver ingested the methamphetamine before the accident and that this action removed her from the course and scope of her employment.

In New Mexico, "whether an employee was acting within the scope of his employment is [generally] a question of fact for the jury." *Ovecka v. Burlington N. S.F. Ry*, 194 P.3d 728, 732 (N.M. Ct. App. 2008). However, "when no facts are in dispute and the undisputed facts lend themselves to only one conclusion, the issue may properly be decided as a matter of law." *Id.* New Mexico's uniform jury instructions provide that

> [a]n act of an employee is within the scope of employment if:
>
> 1. It was something fairly and naturally incidental to the

employer's business assigned to the employee, and

> 2.  It was done while the employee was engaged in the employer's business with the view of furthering the employer's interest and did not arise entirely from some external, independent and personal motive on the part of the employee.

UJI 13–407 NMRA.  While this rule seems simple, "because of the ever-varying facts of each particular case," it must nevertheless be applied variably, *Tinley v. Davis*, 609 P.2d 1252, 1253 (N.M. Ct. App. 1980), "with reference to the time, place, and circumstances under which the injury occurred," *Ovecka*, 194 P.3d at 733 (internal quotation marks omitted).  In order for Swift "to escape liability, it must be shown that [its driver], when the wrongful act was committed, had abandoned h[er] employment and was acting for a purpose of h[er] own which was not incident to h[er] employment." *Hansen v. Skate Ranch, Inc.*, 641 P.2d 517, 521 (N.M. Ct. App. 1982).

The undisputed facts in this case show that Swift's driver was specifically employed to drive Swift's tractor-trailer and, at the time of the accident, Swift's driver was on duty, driving on her assigned route under Swift's direction, and attempting to meet the deadline Swift established for the delivery of goods  While it is true that the exact time Swift's driver ingested narcotics—if she did in reality ingest them—is disputed, this fact is immaterial.  Driving a tractor-trailer while under the influence of  methamphetamine is a negligent act, "but this does not

-5-

mean that [the] negligent act [was] outside the scope of [the driver's] employment." *Nichols v. United States*, 796 F.2d 361, 365 (10th Cir. 1986) (quoting *Hansen*, 641 P.2d at 521). At the time of the accident, Swift's driver was "engaged in [her] employer's business with the view of furthering [her] employer's interest." UJI 13–407 NMRA. Indeed, even if the actual act of consuming methamphetamine were to constitute an abandonment of the driver's employment, Swift's driver resumed her employment as soon as she recommenced driving Swift's tractor-trailer on the assigned route. *See Ovecka*, 194 P.3d at 735 (recognizing that an employee may return to her employment after previously abandoning it). Nor has Swift argued there was evidence its driver was so severely impaired by methamphetamine that a jury could find she had not returned to her employment even after she had resumed driving, as New Mexico law would require in order for Swift to avoid liability. *See id.* While we certainly do not hold that ingesting illicit drugs can never remove an employee from the course and scope of employment, we conclude that, under these facts, the district court's instruction was proper. Indeed, as counsel for the Fredericks argued, to hold otherwise would be to hold that a professional driver who consumes narcotics can be considered as acting outside the scope of her employment for hours at a time, even if she has continued to drive her employer's vehicle on its prescribed route and in furtherance of her employer's interests.

B. *Negligence per se under the Federal Safety Regulations*

-6-

At trial the court instructed the jury that if it found Swift's driver violated any one of several Federal Motor Carrier Safety Regulations, including FMCSR §§ 383.213(a), 382.501(a), or 392.4(a), "then [the driver's] conduct constitutes negligence as a matter of law." (Appellant's App. at 2021.) Swift argues this instruction was given in error because these regulations only apply to "drivers" and not "employers"; as such, Swift argues, a driver's violation is not a proper basis for holding the employer liable. However, as the trial court noted in its order denying Swift's motion for a new trial, this argument "conveniently overlooks that the court found as a matter of law that [Swift's driver] was its employee and acting within the course and scope of her employment when the accident occurred." (Appellant's App. at 4465.) Under the doctrine of respondeat superior, Swift is liable for all the negligent behavior of its employee, which includes violations of the Federal Motor Carrier Safety Regulations. The court committed no error in providing this instruction.

*C. Claims for negligent hiring and negligent retention*

Swift claims the district court erred by instructing the jury as to its potential liability under the theory of negligent hiring or retention after it had already found, as a matter law, that Swift was liable for its driver's negligent acts under the doctrine of respondeat superior.[4] For support, Swift points to a line of

_____

[4] Swift has also alleged there is insufficient evidence to support an
(continued...)

-7-

cases from various jurisdictions holding that "when an employer admits the applicability of respondeat superior, it is entitled to summary judgment on claims for negligent entrustment, hiring, and retention." *Durben v. Am. Materials, Inc.*, 503 S.E.2d 618, 619 (Ga. App. Ct. 1998). The reason for this rule is the view "that, since the employer would be liable for the employee's negligence under respondeat superior, allowing claims for negligent entrustment, hiring, and retention would not entitle the plaintiff to a greater recovery, but would merely serve to prejudice the employer." *Id.* Despite this limitation, however, those courts that have adopted this rule have also generally recognized an exception to the rule whereby a plaintiff may bring a claim based on negligent hiring or retention along with its claims under respondeat superior when the plaintiff "has a valid claim for punitive damages against the employer based on its independent negligence in hiring and retaining the employee." *Id.*; *see also, e.g., Coville v. Ryder Truck Rental, Inc.*, 817 N.Y.S.2d 179, 180 (N.Y. App. Div. 2006);

---

[4](...continued) instruction for either negligent hiring or retention; however, after reviewing the record we conclude there was sufficient evidence in the record to support the Fredericks' claims. Although the Fredericks' expert did not testify Swift's employment practices violated any specific federal regulations, his testimony was sufficient to show, consistent with New Mexico law, Swift's employment practices may have violated its "common law duty to members of the public whom [Swift] might reasonably anticipate would be placed in a position of risk of injury as a result of the [employment]." *Lessard v. Coronado Paint & Decorating Ctr., Inc.*, 168 P.3d 155, 166 (N.M. Ct. App. 2007) (internal quotation marks omitted).

*McHaffie v. Bunch*, 891 S.W.2d 822, 826 (Mo. 1995); *Tindell v. Enderle*, 320 N.E.2d 764, 768 (Ind. Ct. App. 1974).

New Mexico's courts have expressly avoided ruling on this theory, *see Ortiz v. New Mexico State Police*, 814 P.2d 117, 120 (N.M. Ct. App. 1991), and, because we can affirm the district court's decision on this issue without considering Swift's proposed rule, we will not speculate as to whether the New Mexico Supreme Court would adopt it. The Fredericks' complaint alleged valid claims for punitive damages against Swift based on Swift's independent actions. Thus, even if New Mexico were to adopt Swift's proposed rule, the court's instruction would have been proper in light of the rule's exception for punitive damages. *Cf. Gillingham v. Reliable Chevrolet*, 966 P.2d 197, 203 (N.M. Ct. App. 1998) (holding that "in order to impose punitive damages against an employer, its conduct must be found to be willful, reckless, or wanton, apart from the conduct of its employee"), *overruled on other grounds by Fernandez v. Espanola Pub. Sch. Dist.*, 119 P.3d 163 (N.M. 2005).

D. *"Promotion" to the 026 fleet*

Prior to the accident at issue, Swift's driver was transferred to a new cross-country fleet, the 026 route. At trial the court gave the following instruction, in relevant part, regarding that transfer: "To establish negligence on the part of Swift, plaintiffs have the burden of proving at least one of the following: . . . Swift failed to use ordinary care in promoting [its driver] to the transcontinental

026 fleet." (Appellant's App. at 2007.) Swift argues there was not substantial evidence its driver was "promoted"; rather, according to Swift, the evidence showed its driver's reassignment was merely a lateral move within the company. Thus, Swift argues, this instruction was both misleading and not supported by the evidence.

The record indicates this new assignment was more difficult, involved important clients, and would result in more pay for Swift's driver. Indeed, Swift's driver manager described the 026 route as having "the best miles" and being "really a good deal for the teams." (Appellees' Supplemental App. at 172.) Given this evidence, we cannot say the district court abused its discretion when it provided this instruction. As the court stated, the Fredericks "could have used some other buzz word to describe [the driver's] transfer to the 026 fleet, but the meaning would have been the same, i.e. [the driver] was advanced to the 026 fleet, not demoted." (Appellant's App. at 4466.)

## Admissibility of Expert Testimony

Having addressed the jury instructions, we now turn to Swift's contentions concerning the admissibility of certain expert testimony.

A. *Admissibility of expert testimony from Dr. Sperry and Mr. Atkinson*

Swift argues the trial court erred by denying its motion to exclude the testimonies of Dr. Kris Sperry (the Fredericks' toxicology expert) and Arthur Atkinson (the Fredericks' trucking safety expert) because their testimonies did not

meet the reliability standards of Rule 702 of the Federal Rules of Evidence and *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993). "[W]e review de novo the question of whether the district court applied the proper standard and actually performed its gatekeeper role in the first instance. We then review the trial court's actual application of the standard in deciding whether to admit or exclude an expert's testimony for abuse of discretion." *Dodge v. Cotter Corp.*, 328 F.3d 1212, 1223 (10th Cir. 2003). "We will not, however, disturb a district court's ruling absent our conviction that it is arbitrary, capricious, whimsical, manifestly unreasonable, or clearly erroneous." *Bitler v. A.O. Smith Corp.*, 400 F.3d 1227, 1232 (10th Cir. 2004). On review "we are concerned with the trial court's performance of its obligation under Rule 702 and *Daubert*, not upon the exact conclusions reached to exclude or admit expert testimony." *Id.*

First, as to the court's gatekeeper function, the record shows that for both witnesses the district court considered preliminary briefing, which included legal argument as well as deposition transcripts and full copies of the experts' reports. The court then held *Daubert* hearings where the witnesses were subjected to examination by both sides, and, as concerned Dr. Sperry, the court considered additional briefing following the hearing. Finally, the court issued detailed opinions as to each witness containing "specific findings on the record," *Dodge*, 328 F.3d at 1223 (emphasis and internal quotation marks omitted), concerning the reliability and relevance of the proffered testimony. After a careful review, we

-11-

conclude there was no error in the manner in which the district court performed its role as a gatekeeper under Rule 702 and *Daubert*. We also conclude the court did not abuse its discretion in deciding to admit those portions of Atkinson's and Sperry's expert opinions ultimately presented at trial.

*B. Partial exclusion of Robert Reed's testimony and proffer of evidence*

Prior to the trial, the district court granted, in part, the Fredericks' motion to strike the proposed expert testimony of Robert Reed, Swift's designated expert on trucking safety and regulatory compliance. Specifically, the court held that several exhibits, including a turning study conducted at the scene of the accident and a perception study showing what a driver could have seen on the night of the accident, fell within areas outside the scope of Reed's expert designation. *See* Fed. R. Civ. P. 37(c)(1). During the trial, the court also refused to allow Swift to make a proffer of the excluded portions of Reed's proposed testimony.

After reviewing the record, we hold the district court did not abuse its discretion in excluding portions of Reed's testimony. *See Woodworker's Supply, Inc. v. Principal Mut. Life Ins. Co.*, 170 F.3d 985, 994 (10th Cir. 1999) (reviewing a Rule 37(c) ruling for abuse of discretion). Swift argues these studies are not reconstruction because they were meant to "determine possibilities, not realities." (Appellant's First Br. at 58.) However, Reed's proposed studies feature Reed behind the wheel of a tractor-trailer substantially similar to those involved in the accident and doing actions substantially similar to those that

-12-

Swift's driver and the driver of the Yellow tractor-trailer did, or attempted to do, leading up to the collision. These studies clearly go beyond mere trucking safety or regulatory compliance and into the realm of accident reconstruction, an area beyond Reed's expert designation.

Additionally, the district court did not err in denying Swift's proffer of evidence. Rule 103 of the Federal Rules of Evidence states, in part, that "[e]rror may not be predicated upon a ruling which . . . excludes evidence unless a substantial right of the party is affected, and . . . the substance of the evidence was made known to the court by offer." Fed. R. Evid. 103(a). Essentially, "the proponent must explain what it expects to show and the grounds for which the party believes the evidence to be admissible." *Polys v. Trans-Colorado Airlines, Inc.*, 941 F.2d 1404, 1407 (10th Cir. 1991) (internal quotation marks omitted). Nevertheless, a proffer of evidence at trial is not needed to satisfy the rule "if the excluded evidence was previously discussed with the trial judge, for example at the pre-trial conference, so that during trial the judge is well aware of the content and purpose of the evidence." *Id.* at 1407 n.2. In this case, the evidence Swift sought to proffer at trial had already been submitted to and considered by the court in the context of the Fredericks' motion to strike Reed's testimony. Any further proffer at trial would have been duplicative.

## Admissibility of Other Evidence

We next consider Swift's arguments concerning several of the district

court's evidentiary rulings. We review a court's evidentiary rulings for an abuse of discretion, according "deference to a district court's familiarity with the details of the case and its greater experience in evidentiary matters." *Sprint/United Mgmt. Co. v. Mendelsohn*, 552 U.S. 379, 384 (2008). "This is particularly true with respect to Rule 403 since it requires an on-the-spot balancing of probative value and prejudice, potentially to exclude as unduly prejudicial some evidence that already has been found to be factually relevant." *Id.* (internal quotation marks omitted). We review de novo the district court's interpretation of state law. *See Salve Regina Coll. v. Russell*, 499 U.S. 225, 231 (1991).

*A. Evidence of the non-use of the sleeper berth safety restraints*

At trial, the district court excluded evidence tending to show Terry Frederick was not using the safety restraints in the sleeper berth at the time of the accident. The court based this ruling on its reading of New Mexico's Safety Belt Use Act. *See* N.M. Stat. Ann. § 66-7-373(A) ("Failure to be secured by a child passenger restraint device or by a safety belt as required by the Safety Belt Use Act shall not in any instance constitute fault or negligence and shall not limit or apportion damages."). On appeal, Swift argues that because the plain language of the statute does not include tractor-trailer sleeper safety nets, the court's ruling improperly expanded "the meaning and definition of the statute" beyond its clear and unambiguous meaning. (Appellant's First Br. at 48.)

We are not persuaded by Swift's argument, as we do not believe that New

Mexico courts would permit the introduction of evidence regarding this particular passenger safety restraint. In *Norwest Bank New Mexico v. Chrysler Corp.*, 981 P.2d 1215, 1224 (N.M. Ct. App. 1999), the New Mexico appellate court held that, although the statute at the time extended only to passengers in the front seats, evidence that passengers in the back seats were not wearing seat belts was still inadmissable at trial. New Mexico law is clear: "specific evidence of the nonuse of seat belts is simply inadmissable," *id.*, and we conclude a sleeper compartment safety restraint is sufficiently similar to a child passenger restraint device or a safety belt to be covered by this rule.

B. *Evidence of prior convictions & driving issues*

At trial, the district court allowed evidence, over Swift's objections, concerning its driver's prior license suspensions, drug use, convictions, and failures on different portions of the necessary licensing exams. On appeal, Swift argues the district court erred because this evidence was either irrelevant, too prejudicial, or both.[5] After reviewing the record and the parties' briefs, we conclude the district court did not abuse its discretion by allowing this evidence.

---

[5] Swift has also argued that evidence of its driver's prior convictions was improper under Rule 609(b) of the Federal Rules of Evidence because the convictions were more than 10 years old. However, the district court allowed evidence of these convictions because it determined that "the probative value of the conviction supported by specific facts and circumstances substantially outweigh[ed] its prejudicial effect." Fed. R. Evid. 609(b). We see no abuse of discretion in this ruling.

The disputed evidence was relevant to the Fredericks' claims, and the court gave appropriate limiting instructions to the jury concerning those pieces of evidence that were relevant only to the driver's credibility.

## Cumulative Error

Finally, Swift argues we should grant a new trial because the trial court's rulings resulted in cumulative error. However, because the trial court committed no errors, there cannot be cumulative error. *See Moore v. Reynolds*, 153 F.3d 1086, 1113 (10th Cir. 1998) ("Cumulative error analysis applies where there are two or more actual errors; it does not apply to the cumulative effect of non-errors.").

## Denial of Prejudgment Interest

As a final issue, we must address the Fredericks' cross-appeal, which alleges the district court erred when it denied the Fredericks' motion for prejudgment interest. New Mexico law states that

[a] court in its discretion may allow interest of up to ten percent from the date the complaint is served upon the defendant after considering, among other things:

(1) if the plaintiff was the cause of unreasonable delay in the adjudication of the plaintiff's claims; and

(2) if the defendant had previously made a reasonable and timely offer of settlement to the plaintiff.

-16-

N.M. Stat. Ann. § 56-8-4(B). However, these two factors are not exclusive and "the trial court should take into account all relevant equitable considerations that further the goals of [the statute]." *Gonzales v. Surgidev Corp.*, 899 P.2d 576, 593 (N.M. 1995) (emphasis omitted).

In denying the Fredericks' motion for prejudgment interest, the trial court first concluded neither they nor Swift caused any unreasonable delay. The court then turned to the reasonableness of Swift's settlement offer of $400,000 (given in response to the Fredericks' offer of $14,000,000).[6] The court characterized the issue as "troublesome and close," and also noted the great disparity between Swift's settlement offer and the jury's final award. (Appellees' Supplemental App. at 285.) However, the court disregarded this disparity, noting that "there is no case law stating that [the final jury award] is an appropriate way to judge whether pre-trial offers are reasonable." (Appellees' Supplemental App. at 286.) The court then found Swift's offer was not unreasonable based on Swift's good-faith denial, throughout the proceedings, of its own negligence and its liability for its driver's actions. Lastly, the court concluded an award of prejudgment interest would not serve the purposes of section 56-8-4(B). We generally review the denial of an award of prejudgment interest for an abuse of discretion. *See Atl.*

---

[6] It should be noted that at a later mediation Swift raised its settlement offer to $560,000 in response to the Fredericks' decreased settlement offer of $13,850,00.

-17-

*Richfield Co. v. Farm Credit Bank of Wichita*, 226 F.3d 1138, 1156 (10th Cir. 2000).

On appeal, the Fredericks argue the district court abused its discretion when it failed to consider the disparity between Swift's settlement offer and the jury's final award. *See Koon v. United States*, 518 U.S. 81, 100 (1996) ("A district court by definition abuses its discretion when it makes an error of law."). In support of their argument, the Fredericks cite *Lucero v. Aladdin Beauty Colls., Inc.*, 871 P.2d 365 (N.M. 1994), where the New Mexico Supreme Court considered whether to affirm an award of prejudgment interest. *Id.* at 366. The court held that, even though the district court had failed to "[e]xpressly find that [the defendant's] offer was unreasonable," this finding could be inferred from the district court's reference to the offer shortly before awarding the interest. *Id.* at 368. The court concluded by stating that "[g]iven the final outcome of the case, the trial court did not abuse its discretion by awarding Lucero prejudgment interest." *Id.* The Fredericks now argue this last statement should be taken to mean that the district court should have considered "the significant difference between Swift's settlement offer and the final verdict in this case." (Appellees' Reply Br. at 13-14.)

We are not convinced that *Lucero* stands for the proposition that a court should consider the disparity between a settlement offer and the final jury award when considering the imposition of prejudgment interest, and we also note that no

-18-

other court has adopted the Fredericks' proposed view. Rather, we read *Lucero*, as did the New Mexico Supreme Court in a subsequent case, to stand for the proposition that a court's reasons for granting or denying prejudgment interest may, in some cases, be inferred from the record. *See Gonzales*, 899 P.2d at 593 (citing to *Lucero* and stating "[t]he court's reasons for denying prejudgment interest need only be ascertainable from the record and not contrary to logic and reason").

A "trial court should take into account all relevant equitable considerations that further the goals of [the statute]." *Id.* Although the court did not consider the difference between the first settlement offer and the final judgment, the court did consider the equities of an award of prejudgment interest. We agree with its judgment that the purposes of section 56-8-4(B) would not be served by an award of prejudgment interest in this case. *See Weidler v. Big J Enters., Inc.*, 953 P.2d 1089, 1102 (N.M. Ct. App. 1997) ("[P]rejudgment interest is an award to discourage recalcitrance and unwarranted delays in cases which should be more speedily resolved; an award to ensure that just compensation to the tort victim is not eroded by the dilatory tactics of the tortfeasor."). Accordingly, we do not think the district court committed an error of law by not considering the difference between Swift's settlement offers and the Fredericks' ultimate award at trial. Nor do we believe the court's decision was "arbitrary, capricious, or whimsical, or result[ed] in a manifestly unreasonably judgment," *United States v.*

-19-

*Weidner*, 437 F.3d 1023, 1042 (10th Cir. 2006) (internal quotation marks omitted).

For the foregoing reasons we **AFFIRM** the district court's rulings on all issues raised by Swift, as well as the court's ruling on the issue of prejudgment interest.