HOLMES, Circuit Judge,
concurring, joined in Part I.C by MARTINEZ, District Judge.
I join much of the majority’s opinion. In particular, I fully join Parts A and B and the portions of Part C not visited here. I also concur in the majority’s ultimate ruling, affirming the district court’s judgment. I write separately to offer my thoughts regarding two of the Schneiders’ jury-instruction challenges and their claim that there was insufficient evidence to support their convictions for health-care fraud resulting in death, pursuant to 18 U.S.C. § 1347. I hope to bolster, and clarify the foundation for, the majority’s rulings on these three matters.
I
A
We “review a district court’s decision to give a particular jury instruction for abuse of discretion,” but “we review de novo legal objections to the jury instructions.” Frederick v. Swift Transp. Co., 616 F.3d 1074, 1079 (10th Cir.2010) (citations omitted) (internal quotation marks omitted); see also Webb v. ABF Freight Sys., Inc., 155 F.3d 1230, 1248 (10th Cir.1998) (“[W]e will find an abuse of discretion if the challenged instruction incorrectly states the governing law.”). We read and evaluate jury instructions in light of the entire record to determine if they “fairly, adequately and correctly state the governing law and provide the jury with an ample understanding of the applicable principles of law and factual issues confronting them.” Lederman v. Frontier Fire Prot., Inc., 685 F.3d 1151, 1154-55 (10th Cir.2012) (quoting United States v. Barrera-Gonzales, 952 F.2d 1269, 1272 (10th Cir.1992)) (internal quotation marks omitted). “We do not determine whether the instructions, on the whole, are flawless, but whether the jury was misled in any way and whether it had an understanding of the issues and its duty to decide those issues.” Brodie v. Gen. Chem. Corp., 112 F.3d 440, 442 (10th Cir.1997) (citation omitted) (internal quotation marks omitted). So long as the charge as a whole adequately states the law, the refusal to give a particular requested instruction is not an abuse of discretion. See United States v. Suntar Roofing, Inc., 897 F.2d 469, 473 (10th Cir.1990).
When no objection has been made at trial, we review jury instructions for plain error. See United States v. Sturm, 673 F.3d 1274, 1281 (10th Cir.2012). “Plain error occurs when there is (i) error, (ii) that is plain, which (in) affects the defendant’s substantial rights, and which (iv) seriously affects the fairness, integrity, or public reputation of judicial proceedings.” United States v. Lopez-Medina, 596 F.3d 716, 738 (10th Cir.2010) (quoting United States v. Ruiz-Terrazas, 477 F.3d 1196, *1298 1199 (10th Cir.2007)) (internal quotation marks omitted).
B
I address here the Schneiders’ challenge to the elemental instructions for illegally dispensing a controlled substance under 18 U.S.C. § 841(a)(1). Specifically, the Schneiders contend that the district court erred in not instructing the jury that, in order to convict the Schneiders of this offense, it had to find that Dr. Schneider dispensed controlled substances with at least knowledge that he was doing so without a legitimate medical purpose or outside of the usual course of professional practice.
1
The Controlled Substances Act (“CSA”) provides, in relevant part: “Except as authorized by this subchapter, it shall be unlawful for any person knowingly or intentionally ... to manufacture, distribute, or dispense, or possess with intent to manufacture, distribute, or dispense, a controlled substance.... ” 21 U.S.C. § 841(a)(1). A physicians’ exemption is found in the CSA’s definitions and related regulations. To be exempted from § 841(a)(l)’s prohibitions, the physician must be registered and acting as authorized. See 21 U.S.C. §§ 802(21), 822(b). “A prescription for a controlled substance to be effective must be issued for a legitimate medical purpose by an individual practitioner acting in the usual course of his professional practice.” 21 C.F.R. § 1306.04(a).[1]
The district court’s jury instructions for the § 841 charges are found in Instructions 20-23. R., Vol. 4, at 838^1 (Jury Instructions, filed July 1, 2010). They follow the same general format:
First: Stephen Schneider dispensed ... controlled substances to [individual]; Second: Stephen Schneider acted knowingly and intentionally; and Third: Stephen Schneider’s actions were not for legitimate medical purposes in the usual course of professional medical practice or were beyond the bounds of medical practice.
In order to find Linda Schneider guilty ... you must find that she aided and abetted Stephen Schneider.
Id. at 841 (Instruction No. 23).
The Schneiders argue that the CSA’s requirement that a physician act “knowingly or intentionally” applies not only to the element of dispensing a controlled substance, but also to the requirement that such dispensing be without authorization under the CSA. In other words, the Schneiders contend that the physician must at least know that the prescription is not “issued for a legitimate medical purpose,” and that the physician was not “acting in the usual course of his professional practice.” See Aplt. Opening Br. (SJS) at 34.
2
At the outset, it is helpful to clarify what issues are not implicated by the Schneid- *1299 ers’ arguments. Notably, it is important to highlight that the viability of the Schneiders’ arguments does not turn on whether the legitimate-medical-purpose and the usual-course-of-professional-practice standards are reflected in the express terms of 21 U.S.C. § 841(a)(1). They are not. At least in the context of this case and under the law of this circuit, the government’s arguments to the contrary are misguided and off-target.
The government observes that the legitimate-medical-purpose and usual-course-of-professional-practice standards are not reflected in the express terms of 21 U.S.C. § 841(a)(1) and that these standards, taken together, constitute no more than an exemption for physicians and are not elements of § 841(a)(1). See Aplee. Br. (SJS) at 18. The government primarily employs this observation in its efforts to distinguish two key Supreme Court cases upon which the Schneiders rely—Liparota v. United States, 471 U.S. 419, 105 S.Ct. 2084, 85 L.Ed.2d 434 (1985), and United States v. X-Citement Video, Inc., 513 U.S. 64, 115 S.Ct. 464, 130 L.Ed.2d 372 (1994). See Aplee. Br. (SJS) at 21-22.
In those cases, drawing upon well-settled and customary interpretive principles, the Supreme Court construed two criminal statutes as embodying a mens rea requirement that was linked to certain substantive elements of the statutes in question. See X-Citement Video, 513 U.S. at 69, 115 S.Ct. 464 (noting “the respective presumptions that some form of scienter is to be implied in a criminal statute even if not expressed, and that a statute is to be construed where fairly possible so as to avoid substantial constitutional questions” (emphasis added)); Liparota, 471 U.S. at 425, 105 S.Ct. 2084 (“The contention that an injury can amount to a crime only when inflicted by intention is no provincial or transient notion. It is as universal and persistent in mature systems of law as belief in freedom of the human will and a consequent ability and duty of the normal individual to choose between good and evil.” (emphasis added) (quoting Morissette v. United States, 342 U.S. 246, 250, 72 S.Ct. 240, 96 L.Ed. 288 (1952)) (internal quotation marks omitted)). And that mens rea requirement that the Supreme Court discerned in the two cases—specifically, a “knowing” mens rea—had to be satisfied before the elements at issue could give rise to criminal liability. See X-Citement Video, 513 U.S. at 78, 115 S.Ct. 464 (“[W]e conclude that the term ‘knowingly’ in [18 U.S.C.] § 2252 extends both to the sexually explicit nature of the material and to the age of the performers.”); Liparota, 471 U.S. at 425, 105 S.Ct. 2084 (“Absent indication of contrary purpose in the language or legislative history of the statute, we believe that [7 U.S.C.] § 2024(b)(1) requires a showing that the defendant knew his conduct to be unauthorized by statute or regulations.”).
The government’s position appears to be that, unlike the statutes at issue in Liparo-ta and X-Citement Video, there are no express elements of § 841(a)(1) embodying the standards at issue here upon which to append a mens rea requirement and, therefore, the Schneiders’ reliance on this Supreme Court precedent is misplaced. Put another way, as the government reasons, because the legitimate-medical-purpose and usual-course-of-professional-practice standards are not express elements of § 841(a)(1), Liparota and X-Citement Video are inapposite and, more specifically, those cases do not militate in favor of a conclusion that it is the government’s obligation to establish that Dr. Schneider acted at least knowingly contrary to one or both of those standards.
The government’s argument, however, is misguided and off the mark for at least two reasons. First, irrespective of the *1300 absence of the legitimate-medical-purpose or usual-course-of-professional-practice standards from the express terms of § 841(a)(1), we have endorsed instructions placing the burden on the government in a § 841(a)(1) prosecution of a physician to prove beyond a reasonable doubt that the physician did not adhere to at least one of these standards. See United States v. Nelson, 383 F.3d 1227, 1231-32 (10th Cir.2004) (“We conclude that the better view is that there was no error in the instruction. A practitioner has unlawfully distributed a controlled substance if she prescribes the substance either outside the usual course of medical practice or without a legitimate medical purpose.” (emphasis added)); accord United States v. Seelig, 622 F.2d 207, 213 (6th Cir.1980) (“[A] conviction under § 841(a)(1) requires the government to prove beyond a reasonable doubt that the drugs were distributed outside the usual course of professional practice.”). Indeed, curiously, in the context of stressing the non-element status of these standards, without citation to pertinent Tenth Circuit authority, the government signals its recognition that it bears the evidentiary burden regarding them. See Aplee. Br. (SJS) at 20 (“[T]he government must prove a doctor’s prescriptions were not issued in the usual course of professional practice and for other than a legitimate medical purpose to prove the statute applies to the doctor, as well as to negate any good faith defense.”).
Second, even if our precedent did not settle the issue, by failing to object before the district court to the court’s instruction—requiring it to negate the fact that Dr. Schneider acted with a legitimate medical purpose or in the usual course of professional practice—the government became bound by the instructions as law of the case. See, e.g., United States v. Bader, 678 F.3d 858, 881 n. 13 (10th Cir.2012) (“[T]he government did not object to any possible error in this instruction and therefore was bound by it.”).
Consequently, the legitimate-medical-purpose and usual-course-of-professional-practice standards are tantamount to express elements of § 841(a)(1), which the government must address in its case-in-chief. And the question thus remains whether the statute should be interpreted so as to require the government to prove that the Schneiders at least knowingly violated at least one of these standards; if so, the district court’s instructions were error.
3
Drawing support from Liparota and X-Citement Video, the Schneiders urge us to adopt the holding of the Ninth Circuit in United States v. Feingold, 454 F.3d 1001 (9th Cir.2006). See Aplt. Opening Br. (SJS) at 39 (“The same considerations that animated the Supreme Court’s decisions in Liparota and X-Citement Video should lead this Court to adopt the holding of Feingold as the law of this Circuit.”). In Feingold, the court held that, in order to convict a physician under § 841, the government must establish, inter alia, that he or she “acted with intent to distribute the drugs and with intent to distribute them outside the course of professional practice.” 454 F.3d at 1008 (emphasis omitted).
However, on this record, I agree with the majority: the Schneiders can find little, if any, succor in Feingold. As the majority put it,
Feingold provides little support because the instructions in Feingold were nearly identical to those in the instant case, and the court in Feingold held that the instructions “compelled the jury to consider whether [the defendant] intended to distribute the controlled substances for a legitimate medical purpose and wheth *1301 er he intended to act within the usual course of professional practice.”
Maj. Op. at 1295 (alteration in original) (quoting Feingold, 454 F.3d at 1009). Thus, even if the jury were required to find that Dr. Schneider (aided and abetted by Ms. Schneider) knowingly acted outside the usual course of professional practice or dispensed drugs for purposes that were not legitimate medical purposes, following the Ninth Circuit’s analysis in Feingold, I would conclude that the instructions given by the district court were not erroneous.
I underscore, however, that we need not decide on this record whether in fact there is such a mens rea requirement—that is, whether the government must prove that a physician defendant at least knowingly violated either the legitimate-medical-purpose or usual-course-of-professional-practice standards. On this point, the majority agrees. See Maj. Op. at 1295 (noting that “we need not decide any mens rea requirement under § 841(a)(1)”). Therefore, for the foregoing reasons, like the majority, I reject the Schneiders’ challenge to the § 841 instructions.
C
I address here the Schneiders’ challenge to the district court’s good-faith instruction. The Schneiders contend that, by reference to the “usual course of professional practice,” this instruction logically precluded the jury from exculpating them on the grounds of good faith. In brief, they argue that, because the jury must find that Dr. Schneider did not act in the usual course of professional practice to find them guilty of the 21 U.S.C. § 841 offenses, this finding would logically prevent the jury from also exculpating them on the grounds of good faith, insofar as the good-faith instruction conditioned a finding of good faith upon a determination that Dr. Schneider was acting in the usual course of professional practice. In other words, reason the Schneiders, the good-faith instruction would require the jury to reach diametrically opposite findings regarding whether Dr. Schneider acted in the usual course of professional practice in order to exculpate him on the grounds of good faith. The Schneiders claim that the alleged error wrought by this instruction was plain and prejudicial.
1
The Schneiders did not raise an objection to the district court’s good-faith instruction at trial. Therefore, as Dr. Schneider acknowledges, see Aplt. Opening Br. (SJS) at 46 n. 12, we review their challenge to the good-faith instruction for plain error, see, e.g., Sturm, 673 F.3d at 1281. Significantly, for an error to be “plain” under this standard, it must be “clear or obvious error.” United States v. McGehee, 672 F.3d 860, 876 (10th Cir.2012); see United States v. Cooper, 654 F.3d 1104, 1117 (10th Cir.2011) (noting that saying an error is “plain,” “means clear or obvious under current law” (quoting United States v. Goode, 483 F.3d 676, 681 (10th Cir.2007)) (internal quotation marks omitted)).
The district court’s jury instruction on good faith reads as follows:
[A] physician does not violate Section 841(a)(1) ... when he dispenses a controlled substance in good faith to a patient in the usual course of professional practice.
The term “good faith” means the honest exercise of good professional judgment as to a patient’s medical needs. Good faith connotes an observance of conduct in accordance with what the physician should reasonably believe to be proper medical practice.
R., Vol. 4, at 845 (Instruction No. 27) (emphasis added). The Schneiders argue that this instruction is plainly wrong because it permitted a jury to find that Dr. *1302 Schneider—as well as Ms. Schneider, as his aider and abettor-—-acted in good faith only if the jury also concluded that he was acting in the usual course of professional practice. See Aplt. Opening Br. (SJS) at 47.
They contend that instead, the jury should have been instructed that if it found Dr. Schneider was acting in good faith, then it should also find that he was acting in the usual course of professional practice. Id. The Schneiders succinctly state what they perceive to be the effect of this purported error:
By conditioning a finding of “good faith” upon a finding that Dr. Schneider had acted “in the usual course of professional practice”, the district court’s instruction guaranteed that the jury could not conclude that Dr. Schneider had acted in good faith. That is because the district court’s elemental instruction for the Section 841 charges required the jury to conclude that Dr. Schneider had not been acting “in the usual course of professional practice.... ”
Id. (emphasis added). According to the Schneiders, “[tjhis [good-faith instructional] error deprived Dr. Schneider [and Ms. Schneider] of [their] primary defense, thereby affecting [their] substantial rights and casting serious doubt upon the fairness of [their] trial.” Id. at 50. Significantly, if the instructions were as the Schneiders would have it, a jury finding of good faith would be tantamount to a determination that Dr. Schneider acted in the usual course of professional practice and, thus, would absolve him (and Ms. Schneider) of criminal liability on the § 841 charges.
Furthermore, in support of their argument, the Schneiders cite examples found in other circuit court decisions of what they view as correct good-faith instructions. See United States v. Armstrong, 550 F.3d 382, 398 (5th Cir.2008), abrogated on other grounds by United States v. Guillermo Balleza, 613 F.3d 432 (5th Cir.2010); United States v. Williams, 445 F.3d 1302, 1309 (11th Cir.2006), abrogated on other grounds by United States v. Lewis, 492 F.3d 1219 (11th Cir.2007); United States v. Vamos, 797 F.2d 1146, 1152 (2d Cir.1986). Notably, they do not offer an example of such a favorable instruction from a Supreme Court or Tenth Circuit case.
The majority summarily rejects the Schneiders’ challenge to the good-faith instruction, concluding that the Schneider’s reading “parses the instruction too finely.” Maj. Op. at 1296. I have no quarrel with the majority’s outcome. I only write to clarify an appropriate foundation for it. In particular, for at least two principal reasons, I would hold that the Schneiders’ challenge cannot prevail on plain-error review because they cannot establish that the district court committed clear or obvious error.
2
First, even if conditioning a good-faith finding on a finding that Dr. Schneider actually acted in the usual course of professional practice could be considered error for the reasons articulated by the Schneiders, in my view, it would have been far from clear or obvious to the district court that its instructions had this effect. In other words, the district court would not have committed clear or obvious error (i.e., plain error) in using the instructions. The district court’s definition of good faith could be read naturally as not focusing on whether Dr. Schneider actually acted in the usual course of professional practice, but rather whether a jury could find that Dr. Schneider held an objectively reasonable belief that he was so acting.
In this regard, the court instructed, “Good faith connotes an observance of conduct in accordance with what the physician *1303 should reasonably believe to be proper medical practice.” R., Vol. 4, at 845 (emphasis added); see also Aplee. Br. (SJS) at 31 (“The defendants also overlook the fact that it is the second paragraph of the instruction, not the phrase they seize upon, that defines ‘good faith’ in the context of a doctor prescribing controlled substances.”). Therefore, under this reading of the court’s good-faith instruction, the jury could well find that Dr. Schneider did not actually act in the usual course of professional practice, but exculpate him of criminal liability on the grounds that he acted with a reasonable belief that he was so acting—viz., it could acquit the Schneid-ers on the basis that Dr. Schneider acted with objectively reasonable good faith. Put another way, under this reading, it would not have been “logically impossible,” as the Schneiders assert, Aplt. Opening Br. (SJS) at 48, for the jury to acquit the Schneiders on the basis of good faith, after first finding that Dr. Schneider actually failed to act in the usual course of professional practice.
As such, the instruction’s reference to the usual course of professional practice simply would have served to ensure that the jury would only acquit Dr. Schneider (as well as Ms. Schneider as an aider and abettor) on the basis of good faith, when there was an objectively reasonable basis for his purported good-faith conduct. This outcome would have been entirely consistent with federal case law, which has rejected a subjective standard of good faith, in favor of an objective one.[2] See Williams, 445 F.3d at 1309 (“[The defendant’s] proposed instruction fails to introduce any objective standard by which a physician’s prescribing behavior can be judged.... Thus, the proposed instruction is contrary to [the Supreme Court’s decision in] Moore.”); United States v. Norris, 780 F.2d 1207, 1209 (5th Cir.1986) (“The district court ... correctly rejected [the defendant’s] proposed charge premised on a theory that a standard medical practice may be based on an entirely subjective standard.”); cf. Moore, 423 U.S. at 142 n. 20, 96 S.Ct. 335 (noting that “[t]he jury was instructed that [the physician defendant] could not be convicted if he merely made ‘an honest effort’ to prescribe for detoxification in compliance with an accepted standard of medical practice ” (emphasis added)).
I need not definitively decide whether my interpretation of the import of the district court’s good-faith instruction is correct. The determinative point is that it would not have been clear and obvious to the district court that its good-faith instruction’s reference to the usual course of professional practice would have had the allegedly impermissible effect of conditioning the jury’s finding of good faith on its determination that Dr. Schneider was acting in the usual course of professional practice. Thus, the district court would not have committed clear or obvious error in using the instructions. Accordingly, on *1304 this basis, the Schneiders’ challenge to the good-faith instruction could not prevail on plain-error review.
The second reason that the Schneiders cannot establish that any error by the district court concerning the good-faith instruction was clear or obvious is even more fundamental. The Schneiders have not drawn our attention to any authority from the Supreme Court or the Tenth Circuit that has invalidated a good-faith instruction like the one here on a theory of error like the Schneiders advance. See, e.g., United States v. DeChristopher, 695 F.3d 1082, 1091 (10th Cir.2012) (“In general, for an error to be contrary to well-settled law, either the Supreme Court or this court must have addressed the issue.” (quoting United States v. Thornburgh, 645 F.3d 1197, 1208 (10th Cir.2011)) (internal quotation marks omitted)); United States v. Wardell, 591 F.3d 1279, 1298 (10th Cir.2009) (noting that the defendant “does not identify any Supreme Court or Tenth Circuit decisions that have addressed” his constitutional claim). Generally, such a circumstance will close the door on a claim that the error at issue is clear or obvious. Further, the cases from other circuits that the Schneiders do cite are not directly on point and, insofar as they speak to the matter before us, they actually appear in significant respect to follow a similar path as the district court here, in imposing an objective standard on the good-faith defense. See, e.g., Armstrong, 550 F.3d at 398 (upholding instruction stating that “[a] controlled substance is prescribed by a physician in the usual course of professional practice, and therefore, lawfully, if the substance is prescribed by him or her in good faith, medically treating a patient in accordance with a standard of medical practice generally recognized and accepted in the United States” (emphasis omitted)); Williams, 445 F.3d at 1309 (upholding an instruction with language similar to that here, stating that “good faith” “means that the doctor acted in accordance with what he reasonably believed to be proper medical practice”); Vamos, 797 F.2d at 1153 (discussing a good-faith instruction that indicates the term “means that the doctor acted in accord with what he reasonably believed to be proper medical practice” and holding that “an instruction that the jury should use an objective standard of reasonableness in deciding whether a practitioner acted in accord with what he believed to be proper medical practice is not improper and does not amount to error”). Accordingly, for at least these two reasons, consistent with the majority’s outcome, I would hold that the Schneiders’ challenge cannot prevail on plain-error review because they cannot establish that the district court committed clear or obvious error.
II
I address here the Schneiders contention that there was insufficient evidence to convict them of health-care fraud resulting in death, pursuant to 18 U.S.C. § 1347.
A
We review the record for sufficiency of the evidence de novo. See, e.g., United States v. Wilson, 107 F.3d 774, 778 (10th Cir.1997). When reviewing the sufficiency of evidence underlying a verdict in a criminal case, we must affirm if, viewing all the direct and circumstantial evidence in the light most favorable to the government, a reasonable trier of fact would find the essential elements of the crime beyond a reasonable doubt. See, e.g., United States v. Suntar Roofing, Inc., 897 F.2d 469, 473 (10th Cir.1990); United States v. Culpepper, 834 F.2d 879, 881 (10th Cir.1987).
B
The Schneiders argue that the evidence presented was insufficient to support the *1305 jury’s finding that any acts of alleged health-care fraud were the cause of any patient deaths. See Aplt. Opening Br. (SJS) at 51. Counts 7-9 charged the Schneiders not just with health-care fraud, but with health-care fraud resulting in the serious bodily injury/death of three individuals—Patricia, Eric, and Robin. See R., Vol. 4, at 149-53; 18 U.S.C. § 1347(a). The district court instructed the jury as follows: “For you to find that serious bodily injury or death resulted from the health care fraud committed by a defendant, the government must prove beyond a reasonable doubt that the individual’s serious bodily injury or death was a result of the health care fraud alleged.” R., Vol. 4, at 851. No challenge has been raised to this instruction on appeal. Like the majority, I conclude that the Schneiders’ sufficiency-of-the-evidence challenge is without merit. I write separately to explicate the appropriate foundation for such a holding.
1
The Schneiders claim that “[tjhere was no evidence presented at trial that possibly could support the conclusion that [their] alleged fraud itself was the cause of any harm to any patient, let alone the cause of anyone’s death.” Aplt. Opening Br. (SJS) at 52. More specifically, the Schneiders argue that there was insufficient evidence to support the jury’s verdicts on the health-care fraud charges in Counts 7-9 because their alleged conduct in submitting bills to a health-care benefits program that contained false or misleading statements or omissions was not itself the cause of harm to any patients. Id. at 53.
Like the government, see Aplee. (SJS) Br. 59, the majority retorts that the Schneiders’ health-care fraud scheme involved more than just the submission of false or misleading bills—viz., more than just their “upcoding and billing practices.” Maj. Op. at 1297. Instead, reasons the majority, the fraudulent scheme involved “the illegal distribution of drugs, which caused the deaths of three patients.” Id. Generally speaking, I have no quarrel with the majority’s response. However, the illegal distribution of drugs—by physicians or non-physicians—may take place quite apart from a health-care fraud scheme, that is, without a nexus to a health-care fraud scheme. In such a circumstance, deaths resulting from illegal drug distribution could not give rise to criminal liability under § 1347. Therefore, to bolster the majority’s conclusion, I write to further define the contours of the nexus between the Schneiders’ illegal drug distribution and their health-care fraud; it is that nexus that permits the Schneiders to be held accountable under § 1347 for the deaths of the three individuals, Patricia, Eric, and Robin.
2
Section 1347 provides:
Whoever knowingly and willfully executes, or attempts to execute, a scheme or artifice—■
(1) to defraud any health care benefit program; or
(2) to obtain, by means of false or fraudulent pretenses, representations, or promises, any of the money or property owned by, or under the custody or control of, any health care benefit program,
in connection with the delivery of or payment for health care benefits, items, or services, shall be fined under this title or imprisoned not more than 10 years, or both. If the violation results in serious bodily injury (as defined in section 1365 of this title), such person shall be fined under this title or imprisoned not more than 20 years, or both; and if the violation results in death, such person shall be fined under this title, or impris *1306 oned for any term of years or for life, or both.
18 U.S.C. § 1347(a).
The government presented sufficient evidence for a reasonable trier of fact to find, first, that the Schneiders engaged in a health-care fraud scheme and, second, that this scheme resulted in the deaths of three individuals. Considering similar or analogous facts, the Sixth Circuit reached a very similar conclusion. See United States v. Martinez, 588 F.3d 301, 321 (6th Cir.2009) (“[A] rational jury could have concluded that [the victim’s] death was a foreseeable result of [defendant’s health-care fraud] conduct. [Defendant] over-prescribed controlled substances that led to [the victim’s] addiction to narcotics, and [defendant] continued to perform unnecessary injections and prescribe harmful medications despite the presence of the clear Ted flags’ of escalating addiction.”).
Other circuit courts also have issued rulings under various rationales that support the conclusion here. See United States v. Merrill, 513 F.3d 1293, 1297-98 (11th Cir.2008) (concluding that there was sufficient proof to support a § 1347 conviction resulting in death, where, inter alia, the “testimony and the documentary evidence demonstrated that [defendant] wrote multiple prescriptions for similar controlled substances for the same patient during the same visit; that he wrote prescriptions for patients on whom he performed no or very minimal physical examination” and “that he wrote prescriptions for patients whose behavior and physical appearance should have raised suspicion that they were addicted to controlled substances”); cf. United States v. Webb, 655 F.3d 1238, 1246-47, 1255-58 (11th Cir.2011) (detailing a physician’s illegitimate prescription-prescribing practices with regard to a patient who died, in connection with rejecting defendant’s challenge to a jury instruction explicating the § 1347 offense resulting in death).
Expert testimony and the Schneiders’ own records revealed at trial that their actions resulted in Patricia, Eric, and Robin becoming addicted to prescription drugs. See, e.g., R., Vol. 13, at 3132, 3138-39, 3181-82; R., Vol. 14, at 516. As these patients’ conditions grew worse, Dr. Schneider’s response was to escalate their prescription drugs, which eventually led to their deaths from overdoses. See, e.g., R., Vol. 13, at 3132, 3181-82; R., Vol. 14, at 516-17, 525-35. The evidence supports the jury’s finding that these patients died from their prolonged treatment outside and contrary to the usual course of professional medical practice—a pattern of treatment for which Dr. Schneider and Ms. Schneider submitted false and fraudulent claims to health-care benefit programs. See, e.g., R., Vol. 13, at 3149-51; R., Vol. 14, at 531-35. These claims were false and fraudulent because, inter alia, they were claims for services not rendered— viz., the claims were reportedly for the provision of legitimate services rendered in the usual course of professional practice, when in fact Dr. Schneider (aided and abetted by Ms. Schneider) furnished illegitimate services and prescriptions, contrary to and outside of the usual course of professional practice.
Viewing this evidence in the light most favorable to the government, see Suntar Roofing, 897 F.2d at 473, a reasonable factfinder could conclude beyond a reasonable doubt that Dr. Schneider and Ms. Schneider were involved in a healthcare fraud scheme; that a key component of it was the provision of medical services outside the usual course of professional practice through the illegal distribution of drugs—for which false or fraudulent bills were submitted to health-care benefit programs; and that, as a result of the provi *1307 sion of such medical services, three individuals (Patricia, Eric, and Robin) died. Thus, for the foregoing reasons, like the majority, I reject the Schneiders attack on the sufficiency of the evidence to support their § 1347 convictions.
Ill
I concur in much of the majority’s opinion—fully joining Parts A and B and the portions of Part C not visited here—and also concur in the majority’s ultimate ruling affirming the district court’s judgment.

. Citing our decision in United States v. Nelson, 383 F.3d 1227 (10th Cir.2004), the Schneiders assert that we have held that the legitimate-medical-purpose and usual-course-of-professional-practice standards are "just two different ways of saying the same thing.” Aplt. Opening Br. (SJS) at 48 n. 13. Actually, we have not gone that far. _ Although, in Nelson, we observed that there was "considerable room to doubt” whether there were material differences between the two standards worthy of advocating for, "recognizing the limits of our imagination,” we were "hesitant to say that it never could make a difference” which standard applied. 383 F.3d at 1231. Although I address, as appropriate, in discussing the Schneiders arguments, one or both of the standards, any differences between the two are not of any appreciable significance to my analysis here.

. Notwithstanding the important role that Dr. Schneider’s purported "good faith” plays in the Schneiders’ exculpatory effort, they fail to offer an alternative definition of the term. They appear to contemplate a form of good faith that is at least primarily subjective. The government certainly sees it this way. See Aplee. Br. (SJS) at 32 ("[I]mplicit in the defendants’ argument on appeal, and what the defendants explicitly requested below, is a subjective standard good faith instruction. ...” (citation omitted)). In this regard, the Schneiders argue as follows: “Although Dr. Schneider allowed that some mistakes may have been made, he testified that his decisions were in fact motivated by the desire to help his patients and based upon his own best medical judgments.” Aplt. Opening Br. (SJS) at 50 (emphases added). As suggested supra, such a subjective standard would not be consistent with federal law. See Aplee. Br. (SJS) at 32 (noting that "the courts have uniformly rejected” a subjective good-faith standard).